Filed 6/28/13  In re Ven. A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re VEN. A. et al., Persons Coming Under the Juvenile Court Law. | D063415 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J517626A-C) |
| v. | |
| ELISE F., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Elise F. appeals juvenile court orders terminating her parental rights to her children, Ven. A., Via. A. and Vin. A. (together, the children). She contends the court reversibly erred by not applying the sibling relationship exception of Welfare and Institutions Code section 366.26, subdivision (c)(1)(B)(v)[1] and the beneficial parent-child relationship exception of subdivision (c)(1)(B)(i) to termination of parental rights and adoption. We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

Ven. A. first became a dependent child of the juvenile court in August 2009 when she tested positive for methamphetamine at birth. The children's father, V.A., and Elise (together, the parents) have a history of domestic violence and substance abuse. The court ordered services for the parents and ordered Ven. A. placed with Elise on condition V.A. not reside in the home.[2] Elise was consistent with therapy and reached her therapy goals, but she struggled with drug treatment. In September 2010, the court continued Ven. A.'s dependency, continued services and ordered Ven. A. placed with both parents.

Elise participated in services, but had problems consistently complying with substance abuse treatment requirements. Consequently, in March 2011, Ven. A. was detained in foster care and the Agency petitioned on her behalf under section 387 based on Elise's failure to comply with substance abuse treatment. The court ordered Ven. A.

---

[1]   Statutory references are to the Welfare and Institutions Code.

[2]   Also living with Elise were Via. A., Vin. A. and Elise's three older children. The older children are not subjects of this appeal.

2

detained with V.A., but he tested positive for drug use and did not comply with the court's conditions. Ven. A. was again detained in foster care.

In June 2011, the Agency petitioned under section 300, subdivision (b) on behalf of Via. A. and Vin. A. alleging they were at substantial risk from Elise and V.A.'s domestic violence. The petition regarding Vin. A. also alleged Elise had left him inadequately attended while she was under the influence of marijuana.

On August 19, 2011, the court found the allegations of the petitions to be true, declared the children dependents of the court, removed them from the parents, ordered them placed them in foster care and ordered reunification services. Because Via. A. and Vin. A. had not been removed from the parents' care at the same time as Ven. A., they were placed in a different foster home.

The parents struggled with their services requirements and were discharged from substance abuse and domestic violence treatment. The visitation center terminated visits because they missed and cancelled visits.

At the review hearing on June 22, 2012, the court found there was not a substantial probability the children could be returned to the parents within the next six months. It terminated reunification services and set a section 366.26 hearing.

The social worker reported the children were generally and specifically adoptable. They were doing very well in their foster homes, and their caregivers had approved adoptive home studies and wanted to adopt them. Via. A. and Vin. A. were happy, but anxious, on days of visits because they were unsure whether the parents would attend. Both children were in therapy. The social worker said that during visits the parents had

3

trouble interacting with all three children at once and sharing their attention. Via. A. and Vin. A. showed much affection for the parents, but had little problem separating from them when visits ended. Ven. A. appeared less connected than Via. A. and Vin. A. to the parents. The court-appointed special advocate (CASA) reported Ven. A. appeared very attached to her foster parents and foster siblings and she acted out after visits. Via. A. and Vin. A. said they liked living with their caregivers, but Via. A. also stated she wanted to live with the parents, and Vin. A. said he missed Elise. The social worker noted the parents loved the children very much, but she characterized their visits as like long play dates with adult relatives, and she did not believe the benefits to the children of maintaining the parent-child relationships were more beneficial than the benefits of adoption.

In December 2012, Elise petitioned under section 388, requesting the children be placed with a relative. The court found there had been a prima facie showing and authorized a bonding study. But the parents did not attend the scheduled study, and their visits continued to be inconsistent.

At the hearing on January 14, 2013, Elise withdrew her section 388 petition, and the court proceeded with the section 366.26 hearing. After considering the documentary evidence and argument by counsel, the court found by clear and convincing evidence the children were generally and specifically adoptable and were likely to be adopted if parental rights were terminated. It terminated parental rights, finding the benefits of the parent-child bonds and of the sibling bonds did not outweigh the benefits of adoption, and that it was in the children's best interests to be adopted.

4

DISCUSSION

I

Elise contends the court reversibly erred because terminating her parental rights would cause substantial interference with the sibling relationships. She argues the children were very bonded to each other and to their older siblings and disruption of the sibling bonds would be detrimental to their long-term emotional well-being.

A. *Legal Framework*

Adoption is the permanent plan favored by the Legislature. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573 (*Autumn H.*).) If the court finds by clear and convincing evidence that a child is adoptable, it becomes the parent's burden to show that termination of parental rights would be detrimental to the child because of a specified statutory exception to termination of parental rights and adoption. (*Id.* at p. 574.) Under section 366.26, subdivision (c)(1)(B)(v), if the court finds the child will be adopted within a reasonable time, adoption must be ordered " 'unless the court finds a compelling reason for determining that termination [of parental rights] would be detrimental to the child' because '[t]here would be substantial interference with a child's sibling relationship . . . .' [Citation.]" (*In re Daniel H.* (2002) 99 Cal.App.4th 804, 811.) The purpose of this exception is to preserve long-standing sibling relationships that serve as "anchors for dependent children whose lives are in turmoil." (*In re Erik P.* (2002) 104 Cal.App.4th 395, 404.) The sibling relationship exception contains "strong language creating a heavy burden for the party opposing adoption." (*In re Daniel H.*, at p. 813.) Factors for the court to consider include the nature and extent of the sibling relationship; whether the

5

siblings were raised in the same home; whether they share a close bond; and whether continued contact is in the child's best interests, as compared to the benefits of adoption. (*Id*. at p. 811.) The court considers the best interests of the adoptive child, not the best interests of the other siblings. (*Id.* at p. 813.)

B. *Application*

The court did not err by finding the sibling relationship exception to termination of parental rights and adoption did not apply in this case. During the time the children lived together with their older siblings, they were very young. Ven. A. was a baby, Vin. A. was 18 months old and Via. A. was five years old. Because Vin. A. and Via. A. were in one foster home and Ven. A. was in another, the three children saw each other for visits, where they shared affection and played together. They clearly loved each other and enjoyed getting together, but their relationships were not so beneficial so as to outweigh the benefits they would gain from being adopted into permanent adoptive homes. Evidence was presented to show that Ven. A. did not see herself as a part of the sibling group, but believed she was separate from Vin. A. and Via. A. and that the parents were Vin. A. and Via. A.'s parents, not hers. Also, Vin. A. said Ven. A. was not part of his family, but that his family consisted of Via. A., his caregivers and their pets. Moreover, although the children's caregivers would not be required to continue contact among the siblings once parental rights were terminated, they had shown an awareness of the importance of sibling contact and had arranged visits on their own among the siblings. The social worker said they intended to continue the contact.

6

Elise's assertion the children have a strong bond with two of the older siblings is not supported by the record. These siblings are much older than the children and were young adults by the time of the hearing. The children saw the older siblings very infrequently during their dependencies. They appeared to enjoy visiting with them, but Elise did not present any evidence to show they would suffer detriment if they no longer had contact.

Elise has not shown the court erred by finding the sibling exception to termination of parental rights and adoption did not apply in this case.

II

Elise asserts substantial evidence does not support the court's finding the beneficial parent-child relationship exception to termination of parental rights and adoption did not apply. She argues the children have strong, positive and significant emotional attachments to her, and Vin. A. and Via. A. had lived much of their lives with her and wanted to continue their relationships.

A. *Legal Framework*

Under the exception to termination of parental rights and adoption of section 366.26, subdivision (c)(1)(B)(i), the parent must show termination would be detrimental in that " '[t]he parents . . . have maintained regular visitation and contact with the [child] and the [child] would benefit from continuing the relationship.' " In *In re Brandon C.* (1999) 71 Cal.App.4th 1530, 1534, the court noted "[c]ourts have required more than just 'frequent and loving contact' to establish the requisite benefit for [the exception of section 366.26, subdivision (c)(1)(B)(i)]."

In *Autumn H., supra*, 27 Cal.App.4th at pages 575-577, this court found substantial evidence to support an order terminating parental rights. This court stated:

> "In the context of the dependency scheme prescribed by the Legislature, we interpret the 'benefit from continuing the [parent/child] relationship' exception to mean the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*Id*. at p. 575.)

In reviewing whether sufficient evidence supports the trial court's finding the appellate court reviews the evidence in the light most favorable to the court's order, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order. (*Autumn H., supra*, 27 Cal.App.4th at p. 576.)

The court did not err by finding Elise did not show the presence of the beneficial parent-child relationship exception to termination of parental rights. Elise did not maintain regular visitation and contact with the children. As the court observed, visits were "very sporadic and infrequent." From November 29, 2011 to July 19, 2012, before the section 366.26 hearing, the family visitation center terminated Elise's visitation twice because her visits were so inconsistent. In October 2012, the social worker reported Elise had missed five of the last nine scheduled visits. She did not attend the bonding study arranged for her and, by the time of the January 2013 hearing, she had attended only nine visits in the preceding 18 weeks.

Moreover, Elise did not show her relationships with the children were so beneficial that termination of parental rights would greatly harm them. Elise's bonds with the children appeared to be more like relationships between playmates than between a

parent and her children.  She had difficulty occupying a parental role and the social worker observed that she and V.A. appeared overwhelmed when attempting to interact with all three children.  The CASA and the visitation monitors commented about Elise's passive parenting style, the CASA noting she was "slow to interact with the children[] or show them affection unless they are within reach during her visits."  The social worker said Elise tended to depend on someone else to occupy or play with the children while she called to each one to come and sit next to her and talk with her.  The social worker noted Elise appeared to favor Vin. A. over Via. A., and that Ven. A. did not look to Elise to meet her needs.  Elise showed love and affection for the children and they for her, but they did not have difficulty separating from her when visits ended.  Elise did not show she occupied a parental role or that the children would be greatly harmed if parental rights were terminated.  She has not shown the court erred by not applying the beneficial parent-child relationship exception to termination of parental rights and adoption.

DISPOSITION

The orders are affirmed.


NARES, Acting P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.

9